**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**(Western Division)**

| | |
|---|---|
| VICTOR L. SMITH<br>117 South Elm Street<br>Troy, OH 45373,<br><br>   *Plaintiff*,<br><br>v.<br><br>CITY OF TROY, OHIO,<br>124 East Main Street<br>Troy, OH 45373;<br><br>MIAMI COUNTY, OHIO,<br>201 West Main Street<br>Troy, OH 45373;<br><br>DEPUTY P.M. OSTING II,<br>c/o Miami County Sheriff's Department<br>201 West Main Street<br>Troy, OH 45373;<br><br>PATROLMAN S.A. GATES,<br>c/o Troy Police Department<br>124 East Main Street<br>Troy, OH 45373;<br><br>PATROLMAN H. HOHENSTEIN,<br>c/o Troy Police Department<br>124 East Main Street<br>Troy, OH 45373;<br><br>PATROLMAN C.A. MADIGAN,<br>c/o Troy Police Department<br>124 East Main Street<br>Troy, OH 45373<br><br>*and*<br><br>JOHN DOE I - IX,<br>all whose true names are unknown,<br><br>   *Defendants*. | **Case No. 3:15-cv-00054**<br><br>**Judge**<br><br>**COMPLAINT AND JURY DEMAND** |

   Plaintiff Victor L. Smith seeks brings this action against Defendants City of Troy, Ohio

("Troy"), Miami County, Ohio ("Miami County"), Deputy P.M. Osting II ("Osting"), Patrolman

2123733.4

S.A. Gates ("Gates"), Patrolman H. Hohenstein ("Hohenstein"), Patrolman C.A. Madigan ("Madigan"), and John Doe I – IX ("John Does"), and alleges as follows:

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, as well as the Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1341, and 1343.  Plaintiff's state law claims for relief are within the supplemental jurisdiction of the Court, pursuant to 28 U.S.C. § 1367.

2.      The unlawful actions alleged in this Complaint took place within the jurisdiction of the United States District Court for the Southern District of Ohio (Western Division at Dayton).  Venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

3.      Plaintiff Victor L. Smith is, and at all times relevant to this action was, a resident of the City of Troy, in the County of Miami, in the State of Ohio.

4.      Defendant City of Troy, Ohio, is a political subdivision organized and operating in the City of Troy, County of Miami, and the State of Ohio, and under the laws of the State of Ohio, which is responsible for policy making, as well as training, supervision, discipline and conduct of police personnel employed by the Troy Police Department.

5.      Defendant Miami County, Ohio, is a political subdivision organized and operating in the County of Miami, and the State of Ohio, and under the laws of the State of Ohio, which is responsible for policy making, as well as training, supervision, discipline and conduct of law enforcement personnel employed by the Miami County Sheriff's Department.

6.      Defendant Deputy P.M. Osting II, at all times relevant to this action, was a law enforcement officer employed by Miami County, Ohio and the Miami County Sheriff's

Department, acting under the color of law or committing wrongful acts intentionally. He is sued individually and in his official and individual capacities.

7.      Defendant Patrolman S.A. Gates, at all times relevant to this action, was a law enforcement officer employed by the City of Troy and the Troy Police Department, acting under the color of law or committing wrongful acts intentionally. He is sued individually and in his official and individual capacities.

8.      Defendant Patrolman H. Hohenstein, at all times relevant to this action, was a law enforcement officer employed by the City of Troy and the Troy Police Department, acting under the color of law or committing wrongful acts intentionally. He is sued individually and in his official and individual capacities.

9.      Defendant Patrolman C.A. Madigan, at all times relevant to this action, was a law enforcement officer employed by the City of Troy and the Troy Police Department, acting under the color of law or committing wrongful acts intentionally. He is sued individually and in his official and individual capacities.

10.     The true names of defendants herein as John Doe I – IX are as yet unknown to Plaintiff, who sues said defendants by such fictitious names, and Plaintiff will amend this Complaint to reflect their actual identities once they become known. On information and belief, at all times relevant to this action, Defendants John Doe I – IX were law enforcement officers employed by either the City of Troy and the Troy Police Department, or Miami County, Ohio and the Miami County Sheriff's Office, acting under the color of law or committing wrongful acts intentionally. They are sued individually and in their official and individual capacities.

3

2123733.4

## FACTS

11.     All preceding paragraphs are re-alleged and incorporated by reference herein as if fully rewritten.

12.     Plaintiff Smith suffers from epilepsy, a condition for which he is under the care of a physician and takes prescription medication to control.  However, his epilepsy causes intermittent and periodic seizures.

13.     On February 11, 2014, at approximately 10:30 A.M., Plaintiff was driving and experienced an epileptic seizure.

14.     During this episode, Plaintiff drove his car off the road into a yard on Glendale Drive, in Troy, Ohio.

15.     Defendants from the Miami County Sheriff's Office and Troy Police Department (collectively, the "Defendant Officers") responded to 450 Glendale Drive, in Troy, Ohio, on the report of a person who had driven his car into a yard.

16.     Defendant Osting was the first law enforcement officer to arrive at the Glendale address.

17.     Upon arrival on the scene, Osting found Mr. Smith in general medical distress, steadying himself against a fence, sweating profusely, and claiming he was feeling ill.

18.     Mr. Smith was unable to respond or otherwise meaningfully communicate with Osting because he was disoriented and in medical distress from the epileptic seizure.

19.     Osting pulled Plaintiff's arm from the fence, kicked his legs from underneath him, and took him to the ground.

20.     When the other Defendant Officers arrived at the scene, Plaintiff had been taken to the ground and was physically restrained.

4

21.     While Mr. Smith was on the ground and physically restrained, Defendant Osting fired his Taser, hitting Mr. Smith.

22.     While Mr. Smith was on the ground and physically restrained, Defendant Gates fired his Taser, hitting Mr. Smith.

23.     While Mr. Smith was on the ground and physically restrained, Defendant Hohenstein fired his Taser, hitting Mr. Smith.

24.     While Mr. Smith was on the ground and physically restrained, Defendant Madigan fired his Taser, hitting Mr. Smith.

25.     In total, Plaintiff Smith was hit with the Taser several times on his back and neck by one or all of the individual Defendant Officers.

26.     At no time did Plaintiff pose a threat to the safety of the law enforcement officers or anyone else.

27.     During the incident, both before and after he was stunned with the Taser, Plaintiff was exhibiting signs of an epileptic seizure and related medical distress and the Defendant Officers knew or should have known of Plaintiff's medical distress.  After repeatedly stunning Plaintiff Smith, the Individual Defendant Officers called for medical assistance for Mr. Smith.

28.     The Troy Fire Department took control of Plaintiff and transported him to Upper Valley Medical Center for treatment.

29.     A physician at Upper Valley Medical Center diagnosed Plaintiff, confirming that he had, indeed, suffered an epileptic seizure.

30.     Members of the Troy Police Department, including one or more Defendant Police Officers, responded to the Upper Valley Medical Center and photographed the Taser wounds on Plaintiff's body.

5

31. The Defendant Officers' use of force against Plaintiff was excessive, gratuitous, and posed a threat of serious physical harm to Plaintiff, while Plaintiff posed no threat of serious physical harm to the Defendant Officers or anyone else.

32. The Defendant Officers' actions were performed willfully, wantonly, maliciously and with reckless disregard for Plaintiff's constitutional rights, which warrants the imposition of exemplary and punitive damages as to those Defendants.

33. Plaintiff, on information and belief, alleges, that Defendants City of Troy, Ohio, and Miami County, Ohio, ordered, authorized, acquiesced in, tolerated, permitted or maintained policies, customs, and usages permitting the Defendant Officers herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs or usages set forth in the foregoing paragraph.

34. The Defendant Officers violated Plaintiff's clearly established constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

35. At the time Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments, Defendants would have understood that the excessive force employed in this situation violated Plaintiff's rights under those provisions and it would have been clear to a reasonable officer that their conduct was unlawful in the situation the Defendant Officers confronted.

36. The Defendants Officers' actions were objectively unreasonable and excessive in light of Plaintiff's clearly established constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution at the time they were performed.

37. As a direct and proximate result of the brutal assault and tasing incident, Plaintiff suffered pain and suffering, painful injuries, humiliation, medical intervention, depression,

6

2123733.4

anxiety, fear and extreme emotional distress. Further, Plaintiff has required the care of a mental health professional since the time of the assault.

## COUNT I

### 42 U.S.C. § 1983 - UNREASONABLE AND EXCESSIVE FORCE

**(Violations of the Fourth and Fourteenth Amendments to the United States Constitution)**

38.     All the preceding paragraphs herein are re-alleged and incorporated by reference herein as if fully rewritten.

39.     The Defendant Officers employed force that was clearly excessive and objectively unreasonable under the prevailing circumstances.

40.     By their conduct, as stated within this Complaint, the Defendant Officers, under color of law, deprived Plaintiff Smith of his constitutional right, under the Fourth Amendment of the United States Constitution, as applied to state actors by the Fourteenth Amendment to the United States Constitution, to be free from excessive and unreasonable force.

41.     In depriving Plaintiff of these rights, Defendants acted recklessly, willfully, wantonly, maliciously, oppressively, and with deliberate indifference to Plaintiff's constitutional rights, thereby justifying the award of exemplary and punitive damages.

42.     As a direct and proximate result of Defendants' actions, Plaintiff suffered injury and damages.

## COUNT II

### 42 U.S.C. § 1983 - FAILURE TO INTEREVENE

43.     All preceding paragraphs herein are re-alleged and incorporated by reference as fully rewritten herein.

7

2123733.4

44.     The Defendant Officers, acting under color of law, each failed to prevent the use of excessive force by the other Defendant Officers.

45.     The Defendant Officers each observed, or had reason to know, that excessive force would be, or was being, used against Plaintiff.

46.     The Defendant Officers had both the opportunity and the means to prevent the harm to Plaintiff from occurring.

47.     The Defendant Officers intentionally, or in deliberate indifference, all failed to intervene to prevent Plaintiff's harm from occurring, acting recklessly, willfully, wantonly, maliciously, oppressively, and with deliberate indifference to Plaintiff's constitutional rights, thereby justifying the award of exemplary and punitive damages.

48.     As the direct and proximate result of Defendants' failure to intervene, Plaintiff suffered injury and damages.

## COUNT III

## <u>MUNICIPAL LIABILITY</u>

### (42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution)

64.     All preceding paragraphs are re-alleged and incorporated herein by reference as if fully rewritten.

65.     Defendants City of Troy, Ohio, and Miami County, Ohio, at all times relevant to this Complaint, had oversight responsibility for Defendant Officers.

66.     Troy and Miami County were responsible for the training, instruction, supervision, and discipline of the Defendant Officers who assaulted and tased Plaintiff.

67.     Plaintiff, on information and belief, alleges that Defendants Troy and Miami County were aware of past complaints, aberrant behavior, and disciplinary infractions with

8

respect to one or more of the Defendant Officers, or, in the exercise of due diligence, would have perceived that these officers had conduct and disciplinary problems that posed a pervasive and unreasonable risk of harm to persons such as Plaintiff.

68.     Troy and Miami County knew, or in the exercise of due diligence would have known, that the conduct of the Defendant Officers with respect to Plaintiff, as outlined within this Complaint, was likely to occur.

69.     On information and belief, Troy and Miami County failed to take preventative and remedial measures to guard against the actions stated within this Complaint.

70.     Had Troy and Miami County taken appropriate action, Plaintiff would not have suffered the injuries and damages stated within this Complaint.

71.     Troy and Miami County directly caused the constitutional violations complained of herein, and are liable for damages Plaintiffs suffered as a result of the Defendant Officers' misconduct, which was a direct consequence of policies, customs and practices of the City of Troy and Miami County, Ohio.

72.     At all times relevant to this Complaint, Defendants had in effect policies, practices and customs that condoned and fostered the unconstitutional conduct of the individual Defendants that were a direct and proximate cause of the damages complained of herein.

73.     Troy and Miami County had policies, practices, customs and usages of encouraging and/or tacitly sanctioning Fourth Amendment violations related to the use of excessive force with respect to persons with medical conditions and disabilities.

74.     At all times relevant to this Complaint, Troy and Miami County exercised duties to instruct, supervise, control, and discipline the Defendant Officers on a continuing basis, having the power to prevent, or aid in the prevention of misconduct complained of herein.

9

75. The existence of these unconstitutional customs and policies is evidenced by repeated occurrences of conduct by the Defendant Officers and other officers, which is the same, or similar to the wrongful conduct complained of herein, as well as a pattern of similar conduct.

76. Defendants knew, or should have known specifically of the Defendant Officers' propensity to engage in the type of misconduct alleged herein, because of internal complaints or lawsuits based on egregious claims and claims similar to Plaintiff's claims, but did not undertake sufficient measures to avoid the foreseeable and highly predictable consequences Plaintiff suffered.

77. Upon information and belief, prior to the incident giving rise to this action, Defendants Troy and Miami County were aware of complaints of similar police misconduct by the Defendant Officers involving the use of excessive force, yet acquiesced and ratified their actions, failing to take warranted remedial action.

78. Despite Troy's and Miami County's knowledge of the Defendant Officers' histories of committing acts of excessive force and aggression against citizens with medical issues or disabilities within his jurisdiction, Defendants hired and retained them anyway, failing to provide adequate supervision, counseling, use of force training, use of force training with respect to citizens with medical issues or disabilities, remedial training, and discipline, as warranted, thereby resulting in the actions complained of herein.

79. When Troy Police Department and the Miami County Sheriff's Office, acting under the control and direction of Defendants City of Troy and Miami County, Ohio, respectively, became aware of the excessive force used against Plaintiff, Defendants had actual knowledge of this incident and failed to adequately investigate it or to take remedial action.

10

80.     It was the policy and/or custom of Defendants to inadequately and improperly investigate citizen complaints of police misconduct, and to tolerate them.

81.     It was the policy and/or custom of Defendants to inadequately supervise and train police officers and deputies, or to discipline them for misconduct, thereby sanctioning the law enforcement officers' actions, which amounted to departmental policies of overlooking constitutional violations.

82.     The training Defendants provided for its respective law enforcement officers was inadequate with respect to detention and the use of force, particularly with respect to persons with medical conditions and disabilities, and this inadequacy was the result of deliberate indifference.

83.     Defendants' willful blindness, encouragement and acquiescence toward constitutional violations of its employees constitutes gross negligence and/or deliberate and conscious, callous indifference to its citizens' rights, including the right to be free from unreasonable and excessive use of force.

84.     Defendants City of Troy, Ohio, and Miami County, Ohio, may be held liable for their failure to train the Defendant Officers because their acts were so egregious that Defendants should have had clear warning that they posed a danger to its citizens.

85.     Even if Defendants' practice of overlooking constitutional violations was not authorized by an officially adopted policy, these practices were so common and well-settled that they fairly represent official policy.

86.     Defendants' formal and informal actions in overlooking, hiding and/or tacitly encouraging law enforcement misconduct violated Plaintiff's civil rights.

11

87. Defendants City of Troy, Ohio, and Miami County, Ohio, are liable for the constitutional torts of the Defendant Officers because they knowingly and deliberately sanctioned the following customs, practices, and policies, which were the moving force behind the constitutional violations:

      a.      Using excessive force to carry out otherwise routine arrests or stops;

      b.      Ignoring the serious need for training and supervision, and failing to train, its officers in regard to the use of force, particularly with respect to persons with medical conditions and disabilities, as well as failing to train with respect to search and seizure;

      c.      Failing to discipline those persons whom are found to have engaged in the use of excessive force upon those entrusted to their care and/or under their control;

      d.      Failing to adequately supervise and/or observe its law enforcement officers;

      e.      Failing to adequately train its law enforcement officers regarding the availability of alternative means of detaining persons other than the use of excessive force;

      f.      Failing to investigate claims of unlawful and excessive use of force;

      g.      Failing to discharge officers who have shown a practice or pattern of using unreasonable or excessive force; and

      h.      Adopting a practice whereby officers who are unfit for peace officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

88. Defendants became aware of the excessive force used against Plaintiff and others and tolerated, encouraged, and condoned this misconduct by consciously ignoring, turning a blind eye, and overlooking the misconduct.

2123733.4

89.     By consciously and deliberately overlooking the acts of misconduct by Defendant Officers, Defendants City of Troy, Ohio, and Miami County, Ohio, established a custom and practice of condoning and ratifying such misconduct, and established a tolerated pattern of constitutional violations among law enforcement officers.

90.     Defendants through their custom and practice of encouraging condoning, tolerating and ratifying constitutional violations by their law enforcement officers, including the Defendant Officers, were deliberately indifferent to the constitutional violations being committed by their law enforcement officers.

91.     Based on the custom and practice of condoning, tolerating and ratifying constitutional violations, and a failure to adequately train and discipline subordinate officers who committed constitutional violations, such as the Defendant Officers, Defendants City of Troy, Ohio, and Miami County, Ohio, are liable for the constitutional violations committed by said Defendants and for the damages Plaintiff suffered as set forth herein.

92.     The inadequacies with respect to the municipal customs, practices and policies were closely related to or actually caused Plaintiff's injuries.

93.     As the direct and proximate result of the conduct, as complained of within this cause of action, Plaintiff has suffered injury and damages.

**COUNT IV**

**<u>NEGLIGENT HIRING AND RETENTION</u>**

94.     All preceding paragraphs herein are re-alleged and incorporated by reference as if fully rewritten herein.

13

95.     Defendants' managerial and supervisory employees who carried out and failed to remedy the constitutional violations complained of herein, including, but not limited to, the use of excessive force were employed by Defendants City of Troy, Ohio, and Miami County, Ohio.

96.     Upon information and belief, Defendants' supervisory and managerial employees had a history and pattern of committing and failing to remedy the constitutional violations complained of herein, including, but not limited to, the use of excessive force.

97.     Defendants knew, or should have known, of their managers' and supervisors' history of failing to remedy the constitutional violations complained of herein, including, but not limited to, the use of excessive force, but hired and retained them anyway.

98.     Defendants' managers and supervisors failed to take effective steps to remedy the constitutional violations complained of herein, including, but not limited to, the use of excessive force.

99.     Defendants knew, or should have known of the Defendant Officers' propensity to commit the constitutional violations complained of herein, including, but not limited to, the use of excessive force, but hired and retained them anyway.

100.    Defendants were negligent in hiring and/or retaining the offending managers, supervisors and Defendant Officers.

101.    As a direct and proximate cause of Defendants' negligence in hiring and/or retaining the offending managers, supervisors, and Defendant Officers, Plaintiff has suffered injury and damages.

2123733.4

## COUNT V

## FAILURE TO TRAIN

102.     All preceding paragraphs herein are re-alleged and incorporated by reference as if fully rewritten herein.

103.     On information and belief, Defendants City of Troy, Ohio, and Miami County, Ohio, equip their respective law enforcement officers with Tasers, purchased from Taser International, Inc., which manufactures and distributes Tasers throughout the country.

104.     Defendants knew or should have known when it purchased the Tasers that there are serious issues with respect to Taser safety, and that law enforcement officers who carry Tasers or who are present when Tasers are fired at a subject must be properly trained on Taser use as well as how to react and attend to a subject who is the recipient of a Taser application.

105.     Defendants further had a mandatory duty to properly and adequately train and supervise all law enforcement officers, including the Defendant Officers, with respect to the use of force against citizens who suffer from medical conditions, including those who suffer from epileptic seizures, so as to avoid unreasonable risk of harm to citizens.  Defendants further have a duty to properly train law enforcement officers, including the Defendant Officers, who carry Tasers or who are present when Tasers are fired at a subject.

106.     With deliberate indifference, Defendants City of Troy, Ohio, and Miami County, Ohio, failed to take necessary, proper, or adequate measures in order to prevent the violation of Plaintiff's rights.  The Defendant Officers' conduct described above shows that they did not know what constituted reasonable force due to inadequate training by Defendants City of Troy, Ohio, and Miami County, Ohio.

15

107.    Policymakers for Defendants knew to a moral certainty that their law enforcement officers would confront subjects and would use Tasers during such confrontations.

108.    On information and belief, Defendants had no policy in place directing its law enforcement officers, including the Defendant Officers, to know when and how to safely operate Tasers, failed to train its law enforcement officers in the safe and proper operation of Tasers, and failed to implement a procedure documenting the use of its Tasers to ensure they were functional and operated safely.

109.    The lack of clear policy and failure to train has exposed citizens of Troy and Miami County to unreasonable uses of force.

110.    The need to adequately train law enforcement officers in the constitutional limitations on the use of force, and specifically the use of force involving Tasers, is so obvious that the failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

111.    Defendants City of Troy, Ohio, and Miami County, Ohio, were deliberately indifferent to Plaintiff's constitutional rights as a citizen because they failed to adequately train their law enforcement officers, especially the Defendant Officers, with respect to use of force against citizens suffering from medical conditions, as well as to the use of force involving Tasers and the proper response to subjects who have received Taser applications

112.    This lack of adequate supervisorial training, and/or lack of adequate policies and procedures, is so gross that it demonstrates the existence of an informal custom or policy of promoting, tolerating, and ratifying the continuing improper use of Tasers and not ensuring their proper functionality on a scheduled basis.

2123733.4

113.     The Defendant Officers' improper training caused the Defendant Officers to violate Plaintiff's constitutional rights in improperly administering excessive force.

114.     As a direct and proximate result of Defendants' acts, omissions, customs, and ratifications, and their failure to adequately train law enforcement officers, the Defendant Officers caused Plaintiff to sustain physical and mental injuries and damages as described above.

## COUNT VI

## AMERICANS WITH DISABILITIES ACT

115.     All preceding paragraphs herein are re-alleged and incorporated by reference as if fully rewritten herein.

116.     The Americans with Disabilities Act ("ADA"), first enacted in 1990 and then amended in 2008 by the ADA Amendments Act of 2008, prohibits discrimination against individuals based on a disability.  42 U.S.C. § 12101 *et seq.*

117.     The express purpose of the ADA, in part, is "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities[,] … to ensure that the Federal Government plays a central role in enforcing [those] standards[,] … and to invoke the sweep of congressional authority … to address the major areas of discrimination faced day-to-day by people with disabilities."  42 U.S.C. § 12101(b)(2)-(4).

118.      Under the dictates of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

119.     At all times relevant hereto, Plaintiff was a qualified individual with a disability for purposes of the ADA, as defined in 42 U.S.C. § 12131(2).

120.     Defendants City of Troy, Ohio, and Miami County, Ohio, are public entities for purposes of the ADA, as defined in 42 U.S.C. § 12131(1)(A).

121.     Defendants' failure to properly train its law enforcement officers, including the Defendant Officers, in the proper manner of confronting and attending to qualified individuals with disabilities, especially those suffering from epileptic seizures, denied Plaintiff the benefits of law enforcement services and subjected him to discrimination.

122.     As a result of Defendants' denial to Plaintiff of the benefits of law enforcement services and Defendants subjecting Plaintiff to discrimination, Plaintiff suffered physical and emotional harm.

123.     As a result of Defendants' denial to Plaintiff of the benefits of law enforcement services and Defendants subjecting Plaintiff to discrimination, Plaintiff has incurred, and will continue to incur expenses, including medical expenses, as well as attorney fees, including litigation expenses and costs.

## COUNT VII

## PENDENT CLAIMS OF ASSAULT AND BATTERY UNDER OHIO LAW

124.     All preceding paragraphs herein are re-alleged and incorporated by reference as if fully rewritten herein.

125.     By their actions, as set forth herein, Defendant Officers intentionally, and without authority and consent, committed acts of assault and battery against Plaintiff, which included, but were not limited to, kicking him without cause and firing a Taser at or upon his person repeatedly.

126.     This use of unreasonably excessive physical force against Plaintiff was unnecessary and excessive.

2123733.4

127. The use of unreasonably excessive physical force harmed Plaintiff and reasonably placed him in fear of the Defendant Officers.

128. Defendants City of Troy, Ohio, and Miami County, Ohio, are responsible for the excessive, objectively unreasonable, and unnecessary physical force used by the Defendant Officers, because the misconduct occurred while these Defendants were acting within the scope of their employment, specifically in the course of detaining Plaintiff, and while they were executing their responsibility to hold him safely in police custody.

129. Defendants City of Troy, Ohio, and Miami County, Ohio, through their custom and practice of encouraging condoning, tolerating and ratifying constitutional violations by their subordinate officers, including the Defendant Officers, were deliberately indifferent to the constitutional violations being committed by their subordinates.

130. Based on the custom and practice of condoning, tolerating and ratifying constitutional violations, and a failure to adequately train and discipline subordinate officers who committed constitutional violations, such as the Defendant Officers, Defendants City of Troy, Ohio, and Miami County, Ohio, are liable for the constitutional violations committed by said Defendants and for the damages Plaintiff suffered as set forth herein.

131. As a direct and proximate result of Defendants' conduct, and the unnecessarily excessive and objectively unreasonable use of physical force and assault, Plaintiff suffered serious physical and mental injuries.

## COUNT VIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

132. All preceding paragraphs herein are re-alleged and incorporated by reference as if fully rewritten herein.

2123733.4

133.     Defendants, through the conduct alleged within this Complaint, acted intentionally, willfully, wantonly, or recklessly, and in an extreme and outrageous manner.

134.     Defendants' actions were the direct and proximate result of Plaintiff's physical, mental and emotional injuries.

135.     Plaintiff's mental anguish was serious and of a nature that no reasonable man could be expected to endure.

136.     Plaintiff has been under the care and supervision of a mental health professional since the time of the incident described in this Complaint.

137.     As a direct and proximate result of Defendants' wrongful acts, Plaintiff has endured medical care and suffered physical injury, pain and trauma, emotional distress and mental anguish.  In addition, he has incurred medical and legal expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Victor L. Smith prays for the following relief:

A.     Compensatory damages against Defendants in an amount to be shown at trial;

B.     Reasonable attorney fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, and any other applicable law;

C.     Punitive damages against Defendants, as appropriate, in an amount to be shown at trial;

D.     Pre-judgment interest and post-judgment interest;

E.     The legal and court costs of this action;

F.    Such other, further and different relief as the case may require and the Court may

deem just and proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiff Victor L. Smith demands a trial by jury.


Dated:  February 10, 2015

                                        /s/ Scott S. Davies
                                        Bryan K. Penick (0071489)
                                        Scott S. Davies (0077080)
                                        Michael J. Leddy (0091164)
                                        SEBALY SHILLITO + DYER
                                        A Legal Professional Association
                                        1900 Kettering Tower
                                        Dayton, OH 45423
                                        937-222-2500
                                        937-222-6554 - fax
                                        *Attorneys for Plaintiff Victor Smith*